IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

VINCENT ELLIOT WILSON,
  Plaintiff,

v.  Civil No. 3:23cv204 (DJN)

LUDUENA MORALES #1361, et al.,[1]
  Defendants.

## MEMORANDUM OPINION

Vincent Elliot Wilson, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[2] The matter is before the Court for evaluation of Wilson's Particularized Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A. For the reasons stated below, the Particularized Complaint (ECF No. 18) will be DISMISSED.

### I. PRELIMINARY REVIEW

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The

---

[1] In his Particularized Complaint, Wilson names only one of the Defendants that he named in his original Complaint, Captain Burgess. The Clerk is DIRECTED to update the caption as reflected above and update the docket to include only those Defendants named in the Particularized Complaint. *See* Part II.

[2] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

In his Particularized Complaint, Wilson names as Defendants: Deputy Luduena Morales; Lieutenant Dozier; Major J. Burgess, who at the time of the allegations was a captain; Beckett, a kitchen staff member; Deborah Byrd, a head nurse; Yasas Rodrigo, a doctor; and Mr. Norman, the "commissary guy" ("Defendants"). (ECF No. 18, at 1–2.) Defendants are all employed at the Arlington County Detention Facility ("ACDF") where Wilson is currently incarcerated. Wilson alleges the following:[3]

> 1. Defendant Luduena Morales violated the Fourteenth Amendment by giving Plaintiff a food tray with feces in it.
> 2. Thursday, February 16, 2023, at approximately 5:00 p.m., for dinner, I received two trays, one with my name on it and regular one which had feces in the mixed carrots and peas, from Defendant Luduena Morales.
> 3. I was eating the mixed vegetables, well I put it in my mouth and noticed a foul smell and taste.
> 4. Plaintiff then immediately spit it out on the tray.

---

[3] The Court employs the pagination assigned to the Particularized Complaint by the CM/ECF docketing system. The Court corrects the capitalization, spelling and punctuation in the quotations from the Particularized Complaint.

3

5. Plaintiff informed Defendant Luduena Morales and showed it to him.

6. Plaintiff then asked for a grievance form multiple times before Defendant Luduena Morales b[r]ought one to cell #8 on unit 11A at approximate[ly] 6:00 p.m.

7. Plaintiff put the mixed vegetables in a clear zip bad then smelled the section on the food tray that had the vegetables in it and it was a very strong bad odor.

8. Plaintiff ate everything else on the food tray due to medical issues and hunger.

9. Plaintiff told Defendant Luduena Morales to smell the spot where the feces was at but he refused once he came back for tray.

10. Defendant Luduena Morales was working unit 11A and his partner was Deputy Juliano.

11. Once settle[d], Plaintiff filled out a grievance and made it an emergency one about feces in the carrots and peas.

12. Defendant Dozier violated the Fourteenth Amendment by telling Plaintiff that he don't want to see the evidence or want it or smell it so he can know it's not a lie and it's a strong feces smell.

13. At approximately at 6:30 p.m., Defendant Dozier came to cell #8 with emergency grievance form and said he will check the camera and that it's a count [sic] with the food trays in the kitchen.

14. Defendant Dozier also stated that the incident wasn't an emergency.

. . . .

16. February 27, 2023, Plaintiff received a grievance response from Defendant Dozier basically saying that he didn't see no type of file [sic] or foul play on the camera about feces incident.

17. Once appealed about 2nd level, Plaintiff was ignored and couldn't appeal the rest of the levels to grievance process about feces in tray.

18. Defendant Burgess violated the Fourteenth Amendment by not caring about the evidence presented or taking the evidence from Plaintiff, telling Plaintiff to throw it in the trash.

19. Tuesday, March 21, 2023, Defendant Burgess came into unit 11A/PC cell #3 to talk to Plaintiff.

20. Defendant Burgess remind Plaintiff of a letter that was sent to him about feces in the food tray.

21. Defendant Burgess than asked Plaintiff do he has evidence and Plaintiff said yes.

22. Defendant Burgess ask to see the evidence and Plaintiff showed it to him.

23. Defendant Burgess then told Plaintiff to throw the evidence in the trash and Plaintiff said, "no he will eat it," so he wouldn't be force to throw it away or so a code would be called.

24. Defendant Burgess then walked away and left off the unit, approximately 11:30 a.m.

25. Also on February 23, 2023, Plaintiff put in a motion and went to court for a facility transfer at Arlington County Courthouse but was denied.

4

> 26. Plaintiff also told lawyer about the feces in the food tray, but nothing was done.
> 27. April 23, 2023, Plaintiff filed and completed Department of Justice forms reporting the day and who was involved of [sic] when the feces was in food on tray, but they did nothing.
> 28. Defendant Yasas Rodrigo violated the Fourteenth Amendment by not taking my name off a food tray after being advised of the incident.
> 29. May 30, 2023, Plaintiff submitted a sick call about taking name off food tray for safety and security purposes.
> 30. Plaintiff had a talk with Defendant Yasas Rodrigo about taking name off food tray, but he said no on medical unit.
> 31. Defendant Byrd violated the Fourteenth Amendment by putting Plaintiff's name on a diet tray making it look like she's helping, but when Plaintiff informed her about safety and securit[y] issues and her still not taking name off of food tray.
> 31. Defendant Beckett violated the Fourteenth Amendment by not acting when Plaintiff submitted a grievance about the food tampering and informing her of the effects.
> 32. July 3, 2022, Plaintiff wrote a grievance concerning the food tampering.
> 34. July 15, 2022, Defendant Beckett wrote response on grievance basically saying that there's no food tampering going on due to the camera and watching.
> 35. Defendant Norman violated the Fourteenth Amendment by bringing Plaintiff tampered with commissary his whole stay at the jail.
> 36. Plaintiff's whole stay at the jail, he['s] been receiving tampered with commissary that's even opened up, have no air in bag, and syringe holes in it.
> 37. As a result from the feces in the food tray, Plaintiff suffered mental and emotional injury and felt humiliated.
> 38. As a result from the food tampering, Plaintiff suffered physical, mental, and emotional injuries and experience severe body aches, fevers, headaches, migraines, chest pains, heart aches, things feeling stuck in muscle, and much more.

(*Id.* at 2–6.) Wilson next sets forth his claims in large paragraphs that are repetitive of the fact section. For ease of review, the Court numbers Wilson's claims here as follows:

Claim One: Defendant Morales's: (a) "actions in giving Plaintiff a food tray that had strong feces in the mixed carrots and peas ... amounts to cruel and unusual punishment in violation of the Fourteenth Amendment Due Process Clause" (*id.* at 7);
(b) "failure to give Plaintiff a grievance form the first few times asked and the failure to smell the vegetables ... amounts to deliberate indifference." (*Id.*)

5

| | |
|---|---|
| Claim Two: | "Defendant Dozier['s] failure to examine and observe Plaintiff's evidence, telling Plaintiff that he don't want to see, smell, and want the evidence stored, amount to deliberate indifference." (*Id.*) |
| Claim Three: | "Defendant Burgess['s] failure to take evidence from Plaintiff and telling Plaintiff to throw evidence in the trash, amounts to deliberate indifference." (*Id.*) |
| Claim Four: | "Defendant Beckett['s] failure to inspect, monitor, and report even after Plaintiff informed he/her about the food tampering amounts to deliberate indifference." (*Id.* at 7–8.) |
| Claim Five: | "Defendant Byrd['s] actions in not taking Plaintiff['s] name off food tray after being advised of safety and security issues amounts to [(a)] cruel and unusual punishment" and (b) deliberate indifference. (*Id.* at 8.) |
| Claim Six: | "Defendant Yasas Rodrigo['s] actions in not taking Plaintiff's name off of food tray even after filling out sick call and informing him about safety and security concerns amounts to [(a)] cruel and unusual punishment" and (b) deliberate indifference. (*Id.* at 8–9.) |
| Claim Seven: | "Defendant Norman['s] actions in giving Plaintiff tampered commissary that's obvious, amounts to [(a)] cruel and unusual punishment" and (b) "failure to act on the obvious tampered with commissary, the chip bags with no air inside, amounts to deliberate indifference." (*Id.* at 9.) |

Wilson also alleges that each Defendant's conduct constitutes negligence and intentional infliction of emotional distress under state law. (ECF No. 9–12.) Wilson asks for declaratory and injunctive relief and monetary damages. (*Id.* at 12–14.)

## III.   ANALYSIS

It is both unnecessary and inappropriate to engage in an extended discussion of Wilson's theories for relief. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (emphasizing that "abbreviated treatment" is consistent with Congress's vision for the disposition of frivolous or "insubstantial claims" (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). Wilson's Particularized Complaint will be dismissed for failing to state a claim for relief and as legally and factually frivolous.

### A. Fourteenth Amendment Standard

Because Wilson was likely a pretrial detainee and not a convicted prisoner at the time that he was subject to these conditions, the Fourteenth Amendment, not the Eighth Amendment, governs his claims of unconstitutional conditions of confinement. *Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013). "[A] pretrial detainee has a right under the Due Process Clause to be free from punishment before his guilt is adjudicated." *Tate v. Parks*, 791 F. App'x 387, 390 (4th Cir. 2019) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citation omitted). In the context of inadequate medical care or conditions posing a risk to a detainee's health, however, to survive the Court's screening obligations under either the Eighth Amendment or Fourteenth Amendment, a plaintiff must allege facts that indicate that the defendant acted with deliberate indifference. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) ("[W]e need not resolve whether Brown was a pretrial detainee or a convicted prisoner because the standard in either case is the same — that is, whether a government official has been 'deliberately indifferent to any [of his] serious medical needs.'" (second alteration in original) (quoting *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990))); *see also Tarashuk v. Givens*, 53 F.4th 154, 163 (4th Cir. 2022).

"The test for deliberate indifference is two-pronged and includes both objective and subjective elements." *Stevens v. Holler*, 68 F.4th 921, 931 (4th Cir. 2023) (citing *Mays*, 992 F.3d at 299). A plaintiff must demonstrate that (1) he "was exposed to a substantial risk of serious harm (the objective prong); and (2) the prison official knew of and disregarded that substantial risk to the inmate's health or safety (the subjective prong)." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994); *see Westmoreland v. Brown*, 883 F. Supp. 67, 72 (E.D. Va. 1995) (observing that, "punishment, whether for a convicted inmate or a pretrial detainee, is the

7

product of intentional action, or intentional inaction, respecting known and substantial risks of harm." (citing *Farmer*, 511 U.S. at 837–38)).

"Deliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).

### B. Claims Pertaining to Fecal Matter in Vegetables

To avoid repetitiveness, the Court collectively addresses certain aspects of Wilson's main underlying claim that he received one food tray with feces in the mixed peas and carrots. As a preliminary matter, Wilson divides several of his claims into separate "cruel and unusual punishment" and "deliberate indifference" claims. However, both are part and parcel of a claim of a Fourteenth Amendment claim of unconstitutional conditions of confinement. Accordingly, the Court will address both subparts of these claims in one analysis and will treat each as one claim. The Court will accept Wilson's allegation as true for the purposes of screening obligations. *See Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (explaining that under § 1915A, a court may not dismiss a claim as frivolous because it finds allegations to be "unlikely").

Third, Wilson fails to allege facts sufficient to indicate that, by receiving one tray with fecal matter in the peas and carrots portion, he sustained a serious or significant mental or physical injury as result or that receiving this tray created an unreasonable risk of danger to his future health. *Strickler v. Water*, 989 F.2d 1375, 1380–81 (4th Cir. 1993); *Westmoreland*, 883 F.

8

Supp. at 76 (explaining that under the Fourteenth Amendment, "a particular condition constitutes punishment only where it *causes* physical or mental injury" (emphasis in original)). "Occasional short-lived problems with food service and isolated instances of spoiled food or foreign objects in the food do not state cognizable claims" under the Fourteenth Amendment. *Reed v. Olson*, No. 4:09–cv–3126–JFA–TER, 2011 WL 765559, *3 (D.S.C. Jan. 19, 2011) (citation omitted) (no constitutional violation where inmate alleged "food is often contaminated with hair, rocks, various pieces of steal [sic] particles, and bugs, both alive and dead" and that "trays on which the food is served are often dirty"); *see Brown v. Brock*, 632 F. App'x 744, 747 (4th Cir. 2015) (citation omitted) ("A single incident of finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner . . . .") Wilson did not consume the mixed peas and carrots, but "immediately spit it out," and then subsequently placed them in a zip top bag. (ECF No. 18, at 2.) At most, Wilson alleges that he "suffered mental and emotional injury and felt humiliated" after receiving the tray with contaminated vegetables. (*Id.* at 6.) This is little more than a recitation of the legal standard. Because Wilson fails to allege facts that would plausibly suggest that he suffered a serious or significant physical or emotional injury, resulting from receiving one tray with contaminated vegetables, *Westmoreland*, 883 F. Supp. at 76, his conditions of confinement claims pertaining to the food tray fail at the outset. For this reason alone, all of Wilson's claims related to the contaminated food tray lack merit and must be dismissed.

Further, as discussed below, Wilson's allegations also fail to indicate that any of the defendants acted with the level of recklessness necessary to support a claim of deliberate indifference.

9

### 1. Claim One

In Claim One (a), Wilson contends that Defendant Morales's "actions in giving Plaintiff a food tray that had strong feces in the mixed carrots and peas . . . amounts to cruel and unusual punishment in violation of the Fourteenth Amendment Due Process Clause." (ECF No. 18, at 7.) However, Wilson fails to allege facts demonstrating that Defendant Morales was aware that he was serving Wilson a tray that allegedly had feces in his mixed peas and carrots. In addition, Wilson fails to plausibly suggest that Defendant Morales knew of and disregarded a serious risk of serious harm to Wilson by serving Wilson an allegedly contaminated tray. Therefore, Claim One (a) lacks merit. *See Brown*, 632 F. App'x at 747 (dismissing claim because inmate "[did] not allege any prior knowledge" on the defendant's behalf).

In Claim Two (b), Wilson contends that Defendant Morales' "failure to give Plaintiff a grievance form the first few times asked and the failure to smell the vegetables . . . amounts to deliberate indifference." (ECF No. 18, at 7.) Wilson alleges that dinner was served at 5:00 p.m., and by 6:00 p.m., Defendant Morales had already brought Wilson the requested grievance form. (*Id.* at 2.) Wilson again fails to allege facts suggesting that by not providing Wilson a grievance form on demand, that Defendant Morales knew of and disregarded a serious risk of harm to Wilson.

Finally, Defendant Morales was also not obligated to smell Wilson's food simply because Wilson insisted that he must, and Wilson fails to allege any constitutional violation based on this conduct. In sum, Wilson fails to show that Defendant Morales acted with deliberate indifference. Accordingly, Claim One will be DISMISSED for failure to state a claim and as frivolous.

10

### 2. Claim Two

In Claim Two, Wilson argues that "Defendant Dozier['s] failure to examine and observe Plaintiff's evidence, telling Plaintiff that he don't want to see, smell, and want the evidence stored, amount to deliberate indifference." (*Id.* at 7.) Wilson also faults Defendant Dozier, because he informed Wilson that this incident did not constitute an emergency. (*Id.* at 3–4.) Wilson fails to allege facts that would suggest that Defendant Dozier was deliberately indifferent to a serious risk of harm to Wilson by refusing to smell or examine the plastic bag of vegetables that Wilson had removed from his food tray. Moreover, from Wilson's allegations, it is evident that Defendant Dozier agreed to go and watch the camera recordings of the kitchen to see if anyone had tampered with the food trays. Defendant Dozier clearly watched the video and saw no evidence of food tampering. Thus, Defendant Dozier was certainly not deliberately indifferent to any serious risk of harm to Wilson. Claim Two will be DISMISSED for failure to state a claim and as frivolous.

### 3. Claim Three

In Claim Three, Wilson faults Defendant Burgess for "fail[ing] to take evidence from Plaintiff and telling Plaintiff to throw evidence in the trash, amounts to deliberate indifference." (*Id.* at 7.) According to Wilson, he received the contaminated mixed peas and carrots on his tray on February 16, 2023. (*Id.* at 2.) Wilson complains that Defendant Burgess asked whether Wilson had the bag of food on March 21, 2023, more than a month after Wilson had received the contaminated food. At that point, a zip top bag of vegetables would be spoiled or rotten and a health hazard for Wilson to keep in his cell, and certainly had no evidentiary value. Defendant Burgess cannot be faulted for instructing Wilson to throw away a month-old bag of vegetables that he had stored in his cell. Wilson fails to show that Defendant Burgess was deliberately indifferent to a serious risk of harm to Wilson by instructing him to throw out a bag of rotted

food instead of taking it with him. Claim Three is entirely lacking in merit and is frivolous and will be DISMISSED.

### 4. Claim Four

In Claim Four, Wilson contends that "Defendant Beckett['s] failure to inspect, monitor, and report even after Plaintiff informed he/her about the food tampering amounts to deliberate indifference." (*Id.* at 7–8.) Wilson's allegations pertaining to Defendant Beckett stem from July 2022. This is eight months before Wilson contends that he received a contaminated food tray. Wilson alleges that he submitted a grievance that Defendant Beckett answered. Defendant Beckett indicated to Wilson that there was no food tampering and that there was a camera recording this area to prevent such an incident. It is unclear whether Wilson intends to argue that he put Defendant Beckett on notice that there could be food tampering going on, and eight months down the road, Wilson received contaminated food, or if his dates are entirely wrong and he was complaining about the one incident where he received this food tray several months after the fact. Regardless, one single incident of receiving a contaminated portion of a food tray does not state a claim of constitutional dimension. Additionally, simply responding to a grievance with an answer that Wilson found unsatisfactory does not make Defendant Beckett deliberately indifferent. *Cf. Brown*, 632 F. App'x at 747 (finding inmate failed to state a claim where he did "not allege any prior knowledge on [defendant's] behalf, aside from the fact that he is in a management position in food services at the prison and that he responded to certain grievances"). Moreover, Wilson fails to allege facts that would plausibly suggest that Defendant Beckett was aware that Wilson received or could receive contaminated vegetables or otherwise acted with deliberate indifference. Accordingly, Claim Four will be DISMISSED for failure to state a claim and as frivolous.

### 5. Claims Five and Six

In Claim Five, Wilson contends that "Defendant Byrd['s] actions in not taking Plaintiff's name off food tray after being advised of safety and security issues amounts to cruel and unusual punishment" and deliberate indifference. (*Id.* at 8.) Similarly, in Claim Six, Wilson contends that "Defendant Yasas Rodrigo['s] actions in not taking Plaintiff['s] name off of food tray even after filling out sick call and informing him about safety and security concerns amounts to cruel and unusual punishment" and deliberate indifference. (*Id.*) As pled, these claims make little sense. Wilson indicates that:

> 1. Defendant Luduena Morales violated the Fourteenth Amendment by giving Plaintiff a food tray with feces in it.
> 2. Thursday, February 16, 2023, at approximately 5:00 pm, for dinner, I received two trays, one with my name on it and regular one which had feces in the mixed carrots and peas, from Defendant Luduena Morales.
> 3. I was eating the mixed vegetables, well I put it in my mouth and noticed a foul smell and taste.
> 4. Plaintiff then immediately spit it out on the tray.

(*Id.* at 2.) Wilson plainly states that he received two trays, and the food tray with his name on it, was *not* the tray that contained the mixed peas and carrots with feces in it. Instead, Wilson clearly states that the regular unlabeled tray contained the contaminated food. Therefore, on the facts alleged, the Court fails to discern, and Wilson fails to allege, why Defendant Byrd's and Rodrigo's refusal to take Wilson's name off his food tray was at all a reason Wilson received contaminated food. Wilson fails to allege facts that would plausibly suggest that Defendants Byrd or Rodrigo were deliberately indifferent to a serious risk of harm to Wilson. Accordingly, Claims Five and Six will be DISMISSED.

### C. Commissary Items

In Claim Seven, Wilson argues that "Defendant Norman['s] actions in giving Plaintiff tampered commissary that's obvious, amounts to cruel and unusual punishment" and his "failure

13

to act on the obvious tampered with commissary, the chip bags with no air inside, amounts to deliberate indifference." (*Id.* at 9.) According to Wilson, during his "whole stay at the jail, he['s] been receiving tampered with commissary that's even opened up, have no air in bag, and syringe holes in it." (*Id.* at 6.) Wilson fails to allege facts that would plausibly suggest that the commissary items he received had been "tampered with" based on these facts that are so fanciful that they are frivolous. A claim is factually frivolous if it depicts "fantastic or delusional scenarios," *Neitzke v. Williams*, 490 U.S. 319, 328 (1989), or where "the facts alleged rise to the level of the irrational or the wholly incredible." *Denton*, 504 U.S. at 33. Wilson's allegations as to why he believes his commissary items have been tampered with are factually frivolous because they are wholly incredible. *See id.*

Similarly, Wilson provides a litany of ailments that he purportedly suffered from due to "tampered with" commissary items, including "physical, mental, and emotional injuries and experience[d] severe body aches, fevers, headaches, migraines, chest pains, heart aches, things feeling stuck in muscle and much more." (*Id.* at 6.) However, Wilson fails to allege facts that would indicate that any of these alleged ailments could be plausibly caused by "tampered with" commissary items. Wilson fails to allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Simply put, Wilson's allegations about the harm he suffered from "tampered with" commissary items are again wholly incredible.[4]

Even considering Wilson's fanciful allegations, Wilson fails to allege facts that Defendant Norman was deliberately indifferent to a serious risk of harm to Wilson. Wilson

---

[4] Notably absent from this list of ailments Wilson suffered is nausea, vomiting, or other intestinal problems, which would be the most likely and obvious result of eating truly contaminated food.

14

indicates that Defendant Norman was the "commissary guy" and that he is liable for "bringing inmates their commissary." (ECF No. 18, at 2.) From Wilson's allegations, is unclear what level of involvement Defendant Norman had in the day-to-day delivery of commissary items to inmates. Assuming that Defendant Norman actually handed the products to inmates or delivered it to their cells, Wilson still fails to allege facts indicating that Defendant Norman was aware that that the commissary items had been "tampered with," much less that Defendant Norman was aware of a serious risk of harm to Wilson by providing Wilson with these commissary items. Wilson states that it was "obvious," because bags were open, deflated or contained syringe holes. However, this does not necessarily indicate that the items had been tampered with or that a person tasked with delivering a variety of commissary items to many inmates would take note of something so slight. Thus, Wilson fails to allege facts that Defendant Norman was deliberately indifferent to a serious risk of harm to Wilson. Claim Seven will be DISMISSED for failure to state a claim and as frivolous.

## IV. STATE LAW CLAIMS

Wilson argues that Defendants' conduct "constitutes the tort of negligence" and "the tort of intentional infliction of emotional distress under the law of Virginia." (ECF No. 18, at 9–12.) Again, Wilson has failed to allege the bare minimum to state claims for relief. Generally, pendant state law claims should be dismissed if the federal claims are dismissed before trial. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). In light of the preliminary dismissal of the federal claims and the vagueness of Wilson's state law claims, the Court declines to exercise its discretion to retain the state tort claims. *See Jenkins v. Weatherholtz*, 909 F.2d 105, 110 (4th Cir. 1990). Accordingly, Plaintiff's state law claims will be DISMISSED WITHOUT PREJUDICE.

## V. CONCLUSION

Wilson's constitutional claims will be DISMISSED for failure to state a claim and as frivolous. Wilson's state law claims are DISMISSED WITHOUT PREJUDICE. The action will be DISMISSED. The Clerk will be DIRECTED to note the disposition of the action for purposes of 28 U.S.C. § 1915(g).

An appropriate Final Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Wilson.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 13, 2023

16